IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

KLAMATH SISKIYOU WILDLANDS                    1:12-cv-1166-PA
CENTER; OREGON WILD; and
CASCADIA WILDLANDS,                           **ORDER**

        Plaintiffs,

    v.

JOHN GERRITSMA; UNITED STATES
BUREAU OF LAND MANAGEMENT,

        Defendants,

ROUGH AND READY LUMBER, LLC;
FARMER LOGGING; and GREG LILES
LOGGING,

        Defendant-Intervenors.

_____

**PANNER, District Judge:**

    Plaintiffs claim that the U.S. Bureau of Land Management

(BLM) violated the National Environmental Policy Act (NEPA) and

1   - ORDER

the Federal Land and Policy Management Act (FLPMA) in approving

the Rio Climax Forest Management Project (the Project).   The

Project would allow logging on 857 acres in the BLM Medford

District.

    Based on the administrative record, I dismiss this action.

## BACKGROUND

    After completing a revised Environmental Assessment (EA) for

the Project, defendant John Gerritsma, BLM field manager,

concluded the Project was not a major federal action that would

require an Environmental Impact Statement (EIS).

    Plaintiffs acknowledge that the Project area has been

"drastically degraded by human manipulation of the environment,"

but contend the area "still retains significant conservation

values."  Pls.' Reply at 1.  The Project will be on land where

timber harvest is the primary use.  Much of the Project is on

land subject to the Oregon & California Lands Act, 43 U.S.C. §

1181a.   Such land is intended primarily "for timber production to

be managed in conformity with the provision of sustained yield."

O'Neal v. United States, 814 F.2d 1285, 1287 (9th Cir. 1987) (per

curiam).   The Project also includes "matrix" land, which has been

designated by the Northwest Forest Plan as "'unreserved areas . .

. in which timber harvest may go forward subject to

environmental requirements.'"   Or. Natural Res. Council Fund v.

Brong, 492 F.3d 1120, 1126 (9th Cir. 2007) (quoting Seattle

Audubon Soc'y v. Lyons, 871 F. Supp. 1291, 1305 (W.D. Wa. 1994),
aff'd, 80 F.3d 1401 (9th Cir. 1996) (per curiam)).

The Project will allow logging on 857 acres, construction of
1.4 miles of new roads, and decommissioning of about 0.5 miles of
roads.  The Project will remove smaller trees while retaining the
larger, healthier trees within a stand.  The Project does not
allow removal of old-growth trees, and will maintain at least 30-
50% canopy cover in the harvested stands.  BLM states the Project
will ensure sustainable forest production by managing conifer
forests to improve growth and vigor; provide timber products;
reduce hazardous fuels on land in the "Wildland Urban Interface";
and provide transportation access within the Project area for
necessary management.

**STANDARDS**

## I.  Summary Judgment Standards Do Not Apply

The parties have filed cross-motions for summary judgment
under Federal Rule of Civil Procedure 56.  The Ninth Circuit has
endorsed the summary judgment motion as "'an appropriate
mechanism for deciding the legal question of whether the agency
could reasonably have found the facts as it did.'"  City & County
of San Francisco v. United States, 130 F.3d 873, 877 (9th Cir.
1997) (quoting Occidental Eng'g Co. v. INS, 753 F.2d 766, 770
(9th Cir. 1985)).  See also Girling Health Care, Inc. v. Shalala,
85 F.3d 211, 214-15 (5th Cir. 1996) ("'The summary judgment

3  - ORDER

procedure is particularly appropriate in cases in which the court is asked to review or enforce a decision of a federal administrative agency.'") (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2733 (1983)).

As counsel stipulated at the hearing, however, the Administrative Procedure Act (APA) governs judicial review here. See Lodge Tower Condo. Ass'n v. Lodge Properties, Inc., 880 F. Supp. 1370, 1374 (D. Colo. 1995) (summary judgment "makes no procedural sense when a district court is asked to undertake judicial review of agency action"), aff'd, 85 F.3d 476 (10th Cir. 1996)). The legal standards for resolving a motion for summary judgment are "inconsistent with the standards for judicial review of agency action" under the APA. Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1579 (10th Cir. 1994). That is because summary judgment procedures are designed to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). When this court reviews an agency decision, however, there will be no trial or disputed issues of fact. See Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv., 689 F. Supp. 2d 891, 894-95 (W.D. Ky. 2010) ("the rules governing summary judgments do not apply because of the limited role of a court in reviewing the administrative record"). For example, Rule 56(c)(1)(A) allows parties to submit

4 – ORDER

"depositions, documents, electronically stored information,

affidavits or declarations, stipulations . . . , admissions,

interrogatory answers, or other materials." Under the APA,

however, the court may consider only the record before the

agency, with narrow exceptions not relevant here. See Ctr. for

Biological Diversity v. U.S. Fish & Wildlife Serv., 450 F.3d 930,

943 (9th Cir. 2006). "Summary judgment" is simply a convenient

label to trigger this court's review of the agency action.

## II.  Judicial Review under the APA

Under the APA, the court determines whether the agency's

decision was "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Before a court may overturn an agency decision under the APA's

deferential standard of review,

> the court must consider whether the decision was based
> on a consideration of the relevant factors and whether
> there has been a clear error of judgment. Although
> this inquiry into the facts is to be searching and
> careful, the ultimate standard of review is a narrow
> one. The court is not empowered to substitute its
> judgment for that of the agency.

Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416

(1971) (citations omitted), abrogated in part on other grounds by

Califano v. Sanders, 430 U.S. 99, 105 (1977). This court

presumes the agency acted properly and affirms the agency when

"'a reasonable basis exists for its decision.'" Nw. Ecosystem

Alliance v. U.S. Fish & Wildlife Serv., 475 F.3d 1136, 1140 (9th

Cir. 2007) (quoting <u>Independent Acceptance Co. v. California</u>, 204
F.3d 1247, 1251 (9th Cir. 2000) (citations omitted)).

**DISCUSSION**

**I.   NEPA Claims**

Plaintiffs bring two claims under NEPA.  "Congress enacted
NEPA 'to protect the environment by requiring that federal
agencies carefully weigh environmental considerations and
consider potential alternatives . . . before the government
launches any major federal action.'"  <u>Ctr. for Biological
Diversity v. Salazar</u>, 695 F.3d 893, 914-15 (9th Cir. 2012)
(quoting <u>Barnes v. U.S. Dep't of Transp.</u>, 655 F.3d 1124, 1131
(9th Cir. 2011) (internal quotation marks omitted)).  "As a
preliminary step, an agency may first prepare a less exhaustive
EA, which is a 'concise public document' that '[b]riefly
provide[s] sufficient evidence and analysis for determining
whether to prepare an environmental impact statement [EIS].'"
<u>Id.</u> (quoting 40 C.F.R. § 1508.9(a)).  Here, after preparing an
EA, BLM determined that an EIS was not necessary.

**A.   Removal of Mistletoe-Infected Trees**

The Project would remove selected trees that are infected by
mistletoe.  The removal would occur on only 10 acres out of the
Project's total of 857 acres.  BLM personnel would select
infected trees for removal based on a rating system that
evaluates the extent of mistletoe infection.  There will be

oversight by a silviculturist and wildlife biologist.  AR 679, 682.

Although the EA states that no old growth trees will be logged, plaintiffs note that mistletoe can infect old growth trees.  At oral argument, the government confirmed that the Project will not allow the removal of any old growth trees, whether or not the tree is infected with mistletoe.

Plaintiffs do not challenge BLM's method for identifying and removing mistletoe-infected trees.  Pls.' Reply at 2 n.1. Instead, plaintiffs contend that NEPA requires BLM to state how many infected trees will be removed.  Plaintiffs argue that BLM does not understand the "true extent and magnitude of the mistletoe removal it plans to conduct."  Pls.' Reply at 2.  The EA, however, limits the area where mistletoe-infected trees will be logged to ten acres.  Plaintiffs have not shown why NEPA requires an individual tree count to understand the effects of removing mistletoe-infected trees from a small portion of the Project.  This court may presume that BLM will choose infected trees based on the rating system described in the EA, and not arbitrarily select trees for removal.  See Nw. Ecosystem Alliance, 475 F.3d at 1140.  Mistletoe will remain plentiful in the more than 500,000 acres of forest not managed for timber harvest.  I conclude that defendants are entitled to judgment on this claim.

**B.  The Project's Effect on Off-Highway Vehicle Use**

The Project will allow 1.4 miles of new roads to be built, while 0.5 miles of existing roads will be decommissioned.  The Project allows less than a mile of temporary roads to be built, and those temporary roads are to be closed in the same season. When the Project is complete, the newly constructed roads will be closed and blocked off.

The EA acknowledges that previous logging and road construction in the Project area has led to unauthorized use of roads by off-highway vehicles (OHVs).  BLM has used different methods to limit OHV use.  A BLM report found that 88% of decommissioned roads had remained closed to vehicles.

Plaintiffs contend defendants are violating NEPA because BLM failed to seek more information on the effects of unauthorized OHV use.  Based on its research into the prevalence and effects of OHV use, BLM concluded that the Project is reasonably designed to minimize such use.  I agree with defendants that BLM's choice of methods to limit OHV use is entitled to deference.  Plaintiffs have not shown that defendants' chosen methods to minimize damage from OHV use are unreasonable.

**II.  FLPMA Claim**

Plaintiffs bring one claim under FLPMA.  "FLPMA requires that the BLM, under the Secretary of the Interior, 'develop, maintain, and when appropriate, revise land use plans' to ensure

that land management be conducted 'on the basis of multiple use and sustained yield.'" Brong, 492 F.3d at 1125 (quoting 43 U.S.C. §§ 1701(a)(7), 1712(a)). To comply with this requirement, the Secretary creates Resource Management Plans (RMPs) to guide development and maintenance of public land. The Project here is subject to the BLM's Medford District RMP.

Plaintiffs contend that defendants have violated FLPMA by failing to comply with the RMP's requirements for protecting soil. As a preliminary matter, I conclude that during the administrative process, plaintiffs adequately raised the issue of harm to fragile soils.

Plaintiffs argue that road building and logging authorized by the Project will violate the RMP's requirements for maintaining long-term soil productivity. The EA acknowledges that the Project's logging and road building will slightly (less than 15%) reduce soil productivity. The EA also includes, however, practices designed specifically to reduce and mitigate soil erosion and loss of soil productivity. AR 685. For example, the EA provides, "All tractor skid locations would be approved by the BLM Contract Administrator," and would be limited to no more than 12% of the harvest unit. AR 685. The EA also provides, "The BLM would immediately shut down all timber harvest and yarding operations if excessive soil damage would occur due to weather or soil moisture conditions." AR 685.

9  - ORDER

Under FLPMA, BLM has "a great deal of discretion in deciding how to achieve" compliance with an RMP. <u>Norton v. S. Utah Wilderness Alliance</u>, 542 U.S. 55, 66 (2004). I conclude that BLM reasonably interpreted the RMP to allow a relatively minor loss of soil productivity so long as the Project also includes practices to limit and mitigate such losses. I also conclude that plaintiffs have failed to show that the Project would violate the RMP's standards for preserving fragile soils.

**III.  Second Declaration of George Sexton**

Plaintiffs submit a second declaration from George Sexton, conservation director for plaintiff KS Wild, with attached exhibits. Plaintiffs argue the declaration and exhibits should be admitted to illustrate harm done by unauthorized vehicles using the Project area.

I strike the declaration. It is not part of the administrative record. <u>See Greater Yellowstone Coalition, Inc. v. Servheen</u>, 665 F.3d 1015, 1024 n.2 (9th Cir. 2011) ("Under the APA, we may consider only the record that was before the agency at the time the challenged decision was made."). Nor have plaintiffs shown the declaration is admissible under one of the exceptions to the rule against considering extra-record evidence. <u>See Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.</u>, 450 F.3d 930, 943 (9th Cir. 2006).

10  - ORDER

## CONCLUSION

Based on the record, this action is dismissed.  All pending motions are denied as moot.  The Second Declaration of George Sexton (#36) is stricken.

IT IS SO ORDERED.


DATED this _2⁄_ day of August, 2013.

OWEN M. PANNER
U.S. DISTRICT JUDGE

11  - ORDER